# Orr&Reno
*Professional Association*

One Eagle Square, P.O. Box 3550, Concord, NH 03302-3550
Telephone 603-224-2381 • Facsimile 603-224-2318
www.orr-reno.com

Malcolm McLane
(Retired)

Ronald L. Snow
Charles F. Leahy
Mary Susan Leahy
William L. Chapman
George W. Roussos
Howard M. Moffett
James E. Morris
John A. Malmberg
Martha Van Oot
Douglas L. Patch
Connie L. Rakowsky
Jill K. Blackmer
James P. Bassett
Emily Gray Rice
Charles A. Szypszak
Steven L. Winer
Peter F. Burger
Lisa Snow Wade
Jennifer A. Eber
Roy S. McCandless
Pamela E. Phelan
Connie Boyles Lane
Jeffrey C. Spear
James F. Laboe
Maria M. Proulx
Michael R. Rizzo

Judith A. Fairclough
(Of Counsel)
Susan S. Geiger
(Of Counsel)

March 10, 2005

F. Lane Finch, Jr., Esquire
Haskell Slaughter Young & Rediker, LLC
1400 Park Place Tower
2001 Park Place North
Birmingham, Alabama 35203

  *Re:*  ***Biomass Resources, Inc.***

Dear Mr. Finch:

  I am writing in response to your letter dated January 14, 2005 and our telephone conference from yesterday. The following is being shared with you for settlement purposes only and shall not be used for any other purposes. While my client is still optimistic and hopeful that we can settle the underlying dispute, your client's requests for information are somewhat unreasonable. Optimism is further undermined by the caption of your January 14th letter – it gives the impression that you have already filed suit.

  First, there are a few points that need to be underscored. My November 4, 2004 letter clearly set forth that the 8% and 16% commission was contingent upon, *inter alia*, Shane Gaither's ("Gaither") direct involvement in developing the "Fiber Model" to meet customer needs, constant monitoring of The Virtual Chip Doctor ("TVCD") customers online, and providing constant customer support. Therefore, if Gaither "agrees" with the 8% and 16% commission, he must also agree that such commission was inextricably intertwined with the above contingencies. Otherwise, there is no "agreement." Furthermore, it is worth noting that Gaither stopped all work on the TVCD "Fiber Model" – including customer support in June 2003. Therefore, his entitlement to commission, if any, should have ceased at that time.

  You have made reference to "Shane's black box algorithm." I must reiterate the fact that the TVCD software was created by Biomass Resources, Inc. ("BRI") and Sunbury Group, Inc. ("Sunbury") long before Gaither ever became involved with BRI. The algorithm that Gaither first presented to BRI in the spring of 2002 was woefully inadequate to create the Fiber Model portion of the TVCD software that the BRI customer initially requested. From approximately

F. Lane Finch Letter
March 10, 2005
Page 2

April 2002 to June 2002, Gaither, Mr. Greg True, Sunbury, and BRI's client rewrote the algorithm that Gaither initially presented. It was this *modified* algorithm that Mr. True originally referred to as the "black box." Gaither's algorithm was never utilized in its original form because it was inadequate for the Fiber Model portion of the TVCD software. To further clarify this point, attached as Exhibit A please find the original algorithm that Gaither presented to BRI in 2002. In addition, attached as Exhibit B, please find a modified algorithm for American Chips Lumber Bowater. You will see that the changes are not merely cosmetic.

Moreover, Gaither's current request for information wrongly assumes that he has an ownership interest in the algorithm that was eventually utilized in the Fiber Model portion of the TVCD software. The modified algorithm at issue is simply a spreadsheet created by multiple parties (Gaither, True, Sunbury, BRI client) that contains "ideas" which, standing alone, are not entitled to copyright protection. Aside from the cases I cited in my previous correspondence, I attach (as Exhibit 3) "Circular 31" published by the U.S. Copyright Office which clearly states that **algorithms** are not subject to copyright protection. I would appreciate it if you could provide me with some legal authority that supports Gaither's claim of ownership in the algorithm.

You have also made reference to a "daily rate." Mr. True has no recollection of owing Gaither a "daily rate" for providing customer support. The 8% and 16% commissions were tied directly into Gaither's customer support obligations. Moreover, you state that "Shane was always available to provide customer support, but no customers requested that from him." Thus, it appears that Gaither never provided any customer support that would have entitled him to this "daily rate." My client also finds it curious that this "daily rate" was not referenced in your initial demand letter dated August 20, 2004.

It is clear that the current dispute between our respective clients primarily stems from the absence of a written contract (other than the Confidentiality Agreement). Furthermore, piecing together the parties' contractual relationship through their course of conduct will undoubtedly prove to be a time consuming and expensive process. My client has already provided all relevant financial information for the time period that Gaither was working with the TVCD team. In fact, all payments to Gaither were accompanied by copies of all the relevant financial information to justify the amount Gaither received. In addition, BRI and Sunbury are not willing to provide Gaither with proprietary source code so he can verify that the algorithm is wholly independent of his original algorithm. Gaither knows that the original algorithm was dramatically changed in 2002. Moreover, Gaither cannot claim an ownership interest in a spreadsheet containing ideas that were generated by multiple parties.

Despite my client's position that Gaither is not entitled to any further remuneration, I have implored BRI to take seriously your resolve to seek resolution in the courts. Therefore, BRI is willing to discuss settlement in an effort to avoid time consuming litigation and

F. Lane Finch Letter
March 10, 2005
Page 3

generating any further expenses. Given the fact that Gaither is no longer involved in the development, service, marketing, etc. of the TVCD software, BRI is unwilling to compensate Gaither at the previous 8% rate. The 8% rate was contingent upon Gaither's full participation. Therefore, BRI is proposing a settlement that would involve a percentage of the original deal (i.e. less than 8%) paid to Gaither over a limited term.

    I look forward to your response.

Sincerely,

James F. Laboe

Enclosure
cc:    Gregory True, President

384525